H. B. CLAFLIN COMPANY, a CORPORATION, *Appellant,* v. FLORIDA KING, T. B. KING AND J. G. KING, *Appellees.*

Where lands were conveyed to W. H. Simmons *Trustee,* in one deed, and other lands conveyed to him as *Trustee for M. P. Simmons and W. W. Langford in another deed,* which deeds were properly recorded, the use of the word *Trustee* in such deeds was sufficient to put a judgment creditor of Simmons and all others on notice that the beneficial interest in the lands conveyed was not in W. H. Simmons, and put them upon inquiry as to his real status to the property; and where the facts show that the money for the purchase of said property was furnished entirely by others, a resulting trust in said lands is shown in favor of the persons furnishing the purchase money, and W. H. Simmons has no interest in said lands to which the lien of a judgment creditor will attach.

This case was decided by Division B.

Appeal from the Circuit Court for DeSoto County.

The facts in the case are stated in the opinion of the court.

*J. W. Burton,* for appellant;

*Treadwell & Treadwell,* for appellees.

HOCKER, J.—Appellees filed their bill in the Circuit Court of DeSoto County against the appellant, alleging in substance that they were the owners in fee simple of certain lands which are described, part of which was conveyed to them by William H. Simmons, trustee, and the other part conveyed to them by William H. Simmons as trustee of M. P. Simmions and W. W. Langford; that W. H. Simmons as trustee for M. P. Simmons and W. W. Langford derived title to part of this land from Nina H. Graham who derived her title from the Florida Land and Improvement Company, and that W. H. Simmons, trustee, derived title to the remainder from the Kissimmee Land Company; that in 1903 W. W. Langford and M. P. Simmons purchased these lands and paid the entire purchase price therefor, and that W. H. Simmons did not contribute any sum of money whatever to the purchase price, and that it was intended that the conveyances to W. H. Simmons as trustee for W. W. Langford and M. P. Simmons, and as trustee, should only invest the title in him in trust for the said Langford and M. P. Simmons; that orators bought the lands from W. W. Langford and M. P. Simmons, who ordered and directed W. H. Simmons to make a deed of conveyance

of the same and in pursuance of such instructions he conveyed the lands to orators as such trustee of M P. Simmons and W. W. Langford, whereby they are now the legal owners of the same.

The bill alleges that on the 12th day of April, 1900, the defendant, the H. B. Claflin Company recovered a judgment against the said W. H. Simmons and others for the sum of $2060.61, which has been duly recorded in the public records of said (DeSoto) county; that said judgment became a lien against the aforesaid lands while the legal title was in W. H Simmons, and that it would be inequitable and a hardship upon your orators to have said lien remain a matter of record, so far as these lands are concerned. The bill then prays for a decree that said judgment and execution which has been subsequently issued thereon be not a lien on the said real estate of your orators, and for general relief, subpoena, &c. This bill was demurred to for want of equity, and the demurrer was overruled. The defendant then answered, admitting the judgment in its favor, and its entry in the records of De-Soto county as alleged; that the records of said county show W. H. Simmons was during the time said judgment was recovered against him the owner of the legal title to the lands described in the bill; that W. H. Simmons derived title as alleged. The answer in substance denies that W. H. Simmons was not interested in said lands, and that he was simply used as a means of conveyance. It denies that he held the title to part of the lands in trust for Mary P. Simmons, or that part of the purchase money was paid by her out of her own money, or anything belonging to her, and that W. H. Simmons did not contribute any sum of money whatever to the purchase price thereof. It denies that it was intended that

the title should vest in W. H. Simmons in trust for said alleged beneficiaries.

The answer alleges that defendant has been informed and believes it to be true that said lands were purchased by said W. W. Langford and W. H. Simmons in their own right, and that the portion of the purchase money alleged to have been paid by M. P. Simmons, who is the wife of W. H. Simmons, was paid for with the money, goods and property of said W. H. Simmons, which had been voluntarily transferred to his said wife since his liability to this defendant was incurred, for the purpose of hindering, delaying and defrauding this defendant in the collection of his debt against W. H. Simmons, and that to declare a trust in said land for the benefit of his wife would be a fraud against this defendant. The answer then alleges that no trust for the use and benefit of W. W. Langford and M. P. Simmons was created by the terms of the conveyance to W. H. Simmons, under the statute of Florida, requiring all declarations and creations of trust, &c., in lands, &c., shall be manifested and proved by some writing signed, &c.; that under the facts no trust arises by implications or construction of law in favor of said beneficiaries.

A replication was filed and testimony on behalf of the complainants was taken, the defendant introducing no testimony.

W. W. Langford testified in substance that he was engaged in and familiar with the purchase of the lands described in the bill; that he talked with Mrs. M. P. Simmons who is his sister, and her husband about buying the lands; that he was informed they could be bought for fifty-five cents an acre; that they had Mr. Simmons in it because he was a good talker and wanted him to talk to John A. Graham, who was a part owner,

and agent for the balance; that the money to purchase the land was furnished entirely by him and Mrs. M. P. Simmons, his sister; that it was her individual money; that she derived the money from her father's estate from which she received $12,000 or $15,000 dollars; that when the land was sold the proceeds were equally divided with Mrs. Simmons.

W. H. Simmons testified that he merely acted as agent in the transaction for W. W. Langford and M. P. Simmons; that he did not have a dollar in it, and contributed nothing towards the purchase; that Mrs. M. P. Simmons used her own individual money in the purchase, and that the money was not money given her by him, or derived from property given to her by him; that Mrs. Simmons' money was derived from her father's estate and the proceeds of investments; that Mrs. Simmons has never lost anything by investments to his knowledge, and that the deeds to the property were made to him as a matter of convenience.

The foregoing is the substance of all the testimony. Attached to the master's report is a copy of the deed of William H. Simmons, trustee,   William H. Simmons, trustee for M. P. Simmons, and W. W. Langford, W. H. Simmons, Mary P. Simmons, W. W. Langford and Martha F. Langford, his wife, conveying the lands described in the bill to the complainants therein.

Upon a final hearing the Circuit Judge made a decree finding that the purchase money of the lands in question was furnished by M. P. Simmons and W. W. Langford, that said lands were held by W. H. Simmons in trust for said W W. Langford and M. P. Simmons, and decreeing that said lands and every part thereof are "free from the operation of the lien of said judgment, and the title to said lands legally and equitably is hereby declared to be

in the complainants." This decree is here on appeal for review.

It is contended by the appellant that the demurrer to the bill should have been sustained, and to sustain this contention relies mainly on the case of Mansfield v. Johnson, 51 Fla. 239, 40 South. Rep. 196. In construing and applying that case it should be borne in mind that it was a statutory action of ejectment, involving by the pleadings in the case, only common law questions, and that by these pleadings no equitable principle was invoked. Apart from this consideration, however, the facts of that case are unlike those of the instant case. In the former case there was nothing on record at the time Johnson's judgment was filed and recorded in Hernando county and became a lien on the lands conveyed by Eubanks Executor to Drew, which contained any suggestion that other persons than Drew had equities in the property. Mansfield v. Johnson, *supra*, p. 251. The facts are otherwise here. In one of the deeds to W. H. Simmons he is named W. H. Simmons Trustee, and in the other W. H. Simmons Trustee for W. W. Langford and M. P. Simmons.

In the case of Johnson v. Calnan, 19 Colo. 168, 34 Pac. Rep. 905, 41 Am. St. Rep. 224, it is held "When the word trustee is inserted in a deed to land after the name of the grantee, and in a subsequent contract relating to the same land he affixes this word 'trustee' to his signature, such word is not merely *descriptio personae*. It indicates that the grantee takes the title, not in his individual capacity, but in trust for another not disclosed, and parol evidence is admissible to show for whom and for what purpose he was constituted a trustee." The court in its opinion seems to hold that such a trust, partly manifested in writing was a sufficient compliance with

the Statute of Frauds requiring declarations of trust conveying an estate or interest in lands to be in writing.

In the case of Mercantile Nat. Bank of Cleveland v. Parsons, 54 Minn. 56, 55 N. W. Rep. 825, 40 Am. St. Rep. 299, it was held "While the fact that a grantee in a deed is described as trustee gives no notice of the name of the beneficiary or of the character of the trust, yet it imposes the duty of inquiring as to its character and limitations upon a party who takes title under the deed; but all that is required of him is good faith and reasonable care in following up the inquiry which the notice given him suggests."

In the case of Marbury v. Ehlen, 72 Md. 206, 19 Atl. Rep. 648, 20 Am. St. Rep. 467, it is held that "the addition of the word 'trustee' to the name of a person, is notice of a trust, and calls for inquiry and examination." See also Railroad Company v. Durant, 95 U. S. 576; Shaw v. Spencer, 100 Mass. 382, S. C. 97 Am. Dec. 107, and note.

Applying the foregoing principles we think that the word "trustee" after the name of W. H. Simmons in one of the deeds, and much more the words "trustee for M. P. Simmons and W. W. Langford" in the other were sufficient to put H. B. Claflin & Co. and every one else on notice that W. H. Simmons did not own the beneficial interests in the lands conveyed to him, and that reasonable inquiry would have developed the facts. Claflin & Co. cannot claim to be innocent creditors or purchasers without notice. Under such circumstances, under the authority of Massey v. Hubbard, 18 Fla. 688, and Holland v. State, 15 Fla. 455, text 519, if Claflin & Co. had levied upon and sold the lands in question, under its execution, the purchaser at such sale would only have taken the title and interest which Simmons had, subject to the equities

existing in favor of Langford and M. P. Simmons and their transferrees.

In the cases of Caruthers v. Williams, 21 Fla. 485, and Ward v. Spivey, 18 Fla. 847, and other cases therein cited, it is held in substance that where the purchase money for land is furnished by one person, and the deed by agreement taken in the name of another the latter holds the title under a resulting trust for the benefit of the former.

We do not think the Circuit Judge erred in making the final decree which has been referred to, and therefore the same is hereby affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J. and COCKRELL and WHITFIELD, JJ., concur in the opinion.